# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

_____

ANTHONY WATSON,

Plaintiff,

v.

DORSTON BARTLETT, DAVID FINNERTY, and KENNY ORCEL, in their individual capacities, and the MASSACHUSETTS BAY TRANSPORTATION AUTHORITY (MBTA),

Defendants.
_____

Civil Action No.

# COMPLAINT AND JURY DEMAND

## INTRODUCTION

1. This is a civil rights action against Dorston Bartlett, a Massachusetts Bay Transportation Authority (MBTA) police officer who unlawfully used force against Anthony Watson. When Mr. Watson tried to report Officer Bartlett's assault, Officer Bartlett arrested Mr. Watson and assaulted him again. Two MBTA sergeants are sued for causing Mr. Watson to remain in custody for seven hours while they attempted to cover up the false arrest. All three officers were indicted in Suffolk Superior Court for their actions. The MBTA is sued for its policies or customs or permitting a subculture of animosity towards homeless people, which caused the officers' conduct in this case. The Defendants' actions violated Mr. Watson's constitutionally protected right to express his criticism of the police and to be free from excessive force and arrest without probable cause.

## JURISDICTION

2. This action is brought pursuant 42 U.S.C. § 1983 and § 1988, and the First, Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and § 1343. Supplemental jurisdiction over claims arising under state law is authorized by 28 U.S.C. § 1367.

## PARTIES

3. Plaintiff Anthony Watson was, at all times relevant to this Complaint, a resident of Suffolk County, Massachusetts, and is now a resident of New London, Connecticut.

4. Defendant Dorston Bartlett was at all times relevant to this complaint a duly appointed police officer of the MBTA Transit Police Department. His actions alleged in this complaint were taken under the color of law. He is sued in his individual capacity.

5. Defendants David Finnerty and Kenny Orcel were at all times relevant to this complaint duly appointed police sergeants in MBTA Transit Police Department. Their actions alleged in this complaint were taken under the color of law. They are sued in their individual capacities.

6. Defendant Massachusetts Bay Transportation Authority is by statute "a body politic and corporate" and provides public transportation to the citizens of the Commonwealth.

## FACTS

7. On July 27, 2018, Mr. Watson fell asleep on a Red Line train after drinking alcohol. He was homeless at the time.

2

8. The train arrived at the end of the line at the Ashmont station. An MBTA inspector and another MBTA employee tried unsuccessfully to wake Mr. Watson.

9. Officer Bartlett responded to a call. He arrived at the train at about 1:43 a.m. He shook Mr. Watson, waking him up him. Mr. Watson stood up and exited the train a few steps ahead of Officer Bartlett. Mr. Watson had a backpack.

10. Mr. Watson stretched, pulled up his hoodie, and sat down on the platform. Officer Bartlett looked around, turning his back to Mr. Watson for a moment.

11. At 1:45 a.m., Officer Bartlett gripped Mr. Watson's right arm with his left hand. Mr. Watson protested. As Officer Bartlett began to escort Mr. Watson along the platform, he held his fully extended metal baton in his right hand.

12. As they walked, Mr. Watson was walking at a slower pace than Officer Bartlett.

13. Suddenly Officer Bartlett pushed Mr. Watson and held him against a pillar. Mr. Watson dropped his backpack.

14. Officer Bartlett raised his metal baton, cocked his arm back, and swung the baton at Mr. Watson, hitting him in the shin/ankle area. Then Officer Bartlett struck Mr. Watson with the baton two more times.

15. Mr. Watson stumbled and fell to the ground. He felt pain and burning in his ankle.

16. Mr. Watson needed help getting up from the ground.

17. Officer Bartlett and the MBTA inspector led Mr. Watson up an escalator.

3

18. Once upstairs Officer Bartlett swore at Mr. Watson, told him to leave, and pushed him out of the subway station.

19. The events at the MBTA station were recorded by MBTA surveillance cameras.

20. Mr. Watson ran from the station to avoid further abuse, leaving his backpack behind.

21. Officer Bartlett took Mr. Watson's backpack in his police car. He located Mr. Watson, got out of his car, and returned the backpack. Then Officer Bartlett said to Mr. Watson, "Get the f--- out of here," and drove away.

22. Mr. Watson asked a passing stranger to call 911 on his behalf to report that he had been assaulted.

23. At 1:52 a.m., a radio call went out to Boston police officers to assist a man who said he had been assaulted near the Ashmont T station.

24. Two Boston police officers arrived and began talking to Mr. Watson.

25. Officer Bartlett heard the radio call for Boston police officers. He turned his car around and drove back towards the station. He falsely told the Boston officers that he had been looking for Mr. Watson to arrest him because Mr. Watson had assaulted him on the train.

26. The Boston police officers cancelled a call for an ambulance and allowed Officer Bartlett to take custody of Mr. Watson based on his false claim that Mr. Watson had assaulted him.

27. Officer Bartlett arrested Mr. Watson, handcuffed him with his hands behind his back, and put him in his police car. When Mr. Watson protested his arrest Officer Bartlett said, "All you had to do was leave."

28. During the ride to the Transit police station Officer Bartlett told Mr. Watson that no one would believe him because he was homeless.

29. Mr. Watson felt worthless. It seemed to him that Officer Bartlett was right that Mr. Watson would not be believed instead he would be held in jail and likely convicted of crimes he did not commit.

30. Officer Bartlett brought Mr. Watson into the Transit Police Department (TPD) station. The events at the TPD station were recorded by surveillance cameras.

31. During booking Mr. Watson protested his arrest. He asked the other officers to view the video from Ashmont station.

32. In front of several other Transit police officers, Officer Bartlett assaulted Mr. Watson again. Officer Bartlett motioned towards Mr. Watson's neck area and pushed him backwards, saying, "This is why you are under arrest."

33. Mr. Watson was defenseless; his hands were cuffed behind his back.

34. Sergeant David Finnerty, the officer in charge of the TPD station, and Sergeant Kenny Orcel, the shift patrol supervisor, ignored Mr. Watson's statements. Instead, they assisted Officer Bartlett in drafting a false police report to justify Officer Bartlett's actions.

35. Had Sergeants Finnerty and Orcel behaved properly, Mr. Watson would have been released from custody.

36. Instead, Mr. Watson was placed in cell at the TPD station. He remained in the cell for 7 hours.

37. While in the cell, Mr. Watson experienced emotional anguish and physical pain from the assaults. He also had gastric distress, for which he takes medicine. The TPD officers failed to provide him with his medication or take any steps to help him.

38. Mr. Watson later described his mental anguish saying, "I'm just worthless. You want to throw my life away."

39. Finally Mr. Watson was released from custody after seven hours only when Deputy Police Chief Sean Reynolds viewed the surveillance footage.

40. People who are homeless or addicted to alcohol or drugs are less likely to complain about police misconduct because they feel that no one will take their complaints seriously. This perception is real, as shown by Officer Bartlett's statement to Mr. Watson that no one would believe him.

41. If Mr. Watson's claim was not captured by MBTA surveillance cameras he likely would not have been believed.

42. Officer Bartlett and Sergeants Finnerty and Orcel were part of a group of TPD officers who felt that people who were homeless, people with mental illness and people suffering from alcoholism and drug addiction could be abused by TPD officers without discipline by the TPD.

43. Other TPD officers, including the officers in the TPD station, looked the other way when fellow officers abused people in these groups.

44. The TPD allowed a policy or custom of tolerating abuse by TPD officers of people who were homeless, people with mental illness and people suffering from alcoholism and drug addiction. Homeless people and people suffering from alcoholism or drug addiction are viewed as people who are powerless. As a result, they are easy targets for abuse by transit police officers.

45. The TPD allowed a "code of silence" to exist which prevented other TPD officers from reporting misconduct by fellow officers.

46. Supervising officers not only permitted misconduct, they helped cover up other officers' abuse.

47. Officer Bartlett and Sergeants Finnerty and Orcel participated in this code of silence by helping Officer Bartlett cover up his physical abuse and arrest of Mr. Watson without probable cause.

48. Officer Bartlett and Sergeants Finnerty and Orcel were following an unconstitutional practice or custom that has existed for a long time in the TPD.

49. Both before and after the incident involving Officer Bartlett and Mr. Watson, there were incidents with similar facts: a TPD officer assaulted someone they perceived to be homeless and under the influence of a substance, the officer lied about what happened, a supervisor assisted in covering up the assault, after the arrest the truth was learned from surveillance video.

50. In July 1999, a seventy-three-year-old man, Mr. Donald Hutcheson, was smoking a cigarette on the MBTA platform at Forest Hills. He was on a day pass from the

Lemuel Shattuck Hospital. A TPD police officer saw him and thought he was a homeless person.

51. A TPD officer handcuffed him, poked him with a collapsible baton and held him both at the Forest Hill Station and at the TPD police headquarters before returning him to the Shattuck Hospital. Other TPD officers assisted in a cover-up by not documenting the arrest, and by lying on an activity log. Video from the police station supported Mr. Hutcheson's claim. Mr. Hutcheson filed suit in federal court, Civil Action No. 00-10715-WGY. The MBTA settled his claim.

52. In 2014, TPD Police Officer Jennifer Garvey was mistreating a woman who appeared to be inebriated at what was then the Dudley Square MBTA station. When another patron, Mary Holmes, tried to prevent this misconduct Officer Garvey attacked her and arrested her with the assistance of Officer Trinh. Officer Garvey's supervising officers tried to cover for her but video from the MBTA station contradicted Officer Garvey's report. Eventually Officer Garvey was charged criminally for assaulting Ms. Holmes. She was found guilty after a trial and sentenced to serve time in custody. Ms. Holmes filed suit. The MBTA settled the case. Part of the settlement required all MBTA officers to undergo "Management of Aggressive Behavior Training."

53. After Mr. Watson's unlawful arrest, on April 22, 2020, TPD Police Officer Morrissey dragged a 63-year-old homeless man from a bus at the Forest Hills Station, pushed his head into the pavement, and dragged him out of the bus lane. The passenger was an intoxicated black man. Officer Morrissey submitted a police report which, as in Mr. Watson's case, was contradicted by video from the station. Officer Morrissey assumed his

word would be believed over the word of a homeless, intoxicated person, just like Officer Bartlett felt some nine months earlier. Officer Morrissey resigned and his supervising officer was placed on administrative leave.

54. Mr. Watson was physically injured and treated as worthless because he was homeless. He knew that Transit Police Officer Bartlett and the other officers were unwilling to listen to him. He feared he would be held in custody and convicted of crimes when he was the victim of the actions of Officer Bartlett.

55. Mr. Watson suffered physical and emotional harm as a result of the use of excessive force against him and his unlawful arrest.

### COUNT I:   42 U.S.C.  Section 1983 – Fourth Amendment Claim

56. The above paragraphs are incorporated by reference.

57. Defendant Bartlett arrested Mr. Watson without probable cause.

58. Defendant Bartlett used unreasonable force on Mr. Watson.

59. Defendant Bartlett deprived Mr. Watson of his clearly established rights to freedom from the use of unreasonable and excessive force and from arrest without probable cause under the Fourth Amendment to the United States Constitution as applied under the Fourteenth Amendment.

60. Defendants Finnerty and Orcel violated Mr. Watson's right not to be held in custody without probable cause by working to assist Defendant Bartlett in preparing a false police report to justify an arrest they knew was without probable cause.

61. As a direct and proximate result of Defendants' actions, Mr. Watson suffered the injuries described above.

## COUNT II:  42 U.S.C. Section 1983 – First Amendment Claim

62. The above paragraphs are incorporated by reference.

63. Defendant Bartlett arrested Mr. Watson in retaliation for his contacting the Boston Police Department to complain about Defendant Bartlett's improper use of force on him.

64. Defendant Bartlett deprived Mr. Watson of his clearly established right to freedom of speech under the First Amendment to the United States Constitution as applied under the Fourteenth Amendment.

65. As a direct and proximate result of Defendant's actions, Mr. Watson suffered the injuries described above.

## COUNT III: 42 U.S.C.  Section 1983 – MBTA

66. The above paragraphs are incorporated by reference.

67. The MBTA allowed a policy or custom to develop among police officers working for the TPD tolerating abuse by TPD officers of people who were homeless, people with mental illness and people suffering from alcoholism and drug addiction.

68. The TPD allowed a "code of silence" to exist, which prevented TPD officers from reporting misconduct by fellow officers, including abuse of the people described above.

69. The policies and customs of the TPD were the moving force behind the conduct of Officer Bartlett and Sergeants Finnerty and Orcel.

70. As a direct and proximate result of Defendants' actions, Mr. Watson suffered the injuries described above.

### COUNT IV: State Claim - Assault and Battery

71. The above paragraphs are incorporated by reference.

72. Defendant Bartlett, without right or privilege, assaulted and beat Mr. Watson before and during his arrest, in an extreme and outrageous manner, thereby causing him great damage.

73. As a direct and proximate result of Defendant's actions, Mr. Watson suffered the injuries described above.

### COUNT V: State Claim - False Arrest

74. The above paragraphs are incorporated by reference.

75. Defendant Bartlett arrested Mr. Watson without probable cause.

76. Defendant's arrest of Mr. Watson was unwarranted, malicious, and was in retaliation for, and to punish Mr. Watson for, exercising his right to freedom of speech.

77. As a direct and proximate result of Defendant's actions, Mr. Watson suffered the emotional distress described above.

### RELIEF REQUESTED

WHEREFORE, the plaintiff requests that this Court:

1. Award compensatory damages;

2. Award the costs of this action, including reasonable attorney's fees; and

3. Award such other and further relief as this Court deems just and appropriate.

### JURY TRIAL DEMAND

The Plaintiff demands a jury trial on all counts so triable.

Respectfully submitted,
Plaintiff, Anthony Watson
By his attorneys,


/s/ Jeffrey Wiesner
Jeffrey Wiesner (BBO No. 655814)
Jennifer McKinnon (BBO No. 657758)
Wiesner McKinnon LLP
90 Canal Street
Boston, MA 02114
Tel.: (617) 303-3940
Fax: (617) 507-7976
Email: jwiesner@jwjmlaw.com
Email: jmckinnon@jwjmlaw.com


Dated: July 13, 2021